IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHNNY COPELAND,
      Petitioner,

vs.                         Case No.:  4:16cv490/WS/EMT

FLORIDA DEPARTMENT OF CORRECTIONS,
SECRETARY
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 1, 2). Respondent filed an answer and relevant portions of the state court record (ECF No. 23).  Petitioner filed a reply (ECF No. 29).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 23).[1] Following a jury trial in the Circuit Court in and for Wakulla County, Florida, Case No. 1978-CF-66, Petitioner was found guilty of one count of first degree murder (Count I), one count of robbery with a firearm (Count II), one count of kidnapping (Count III), and one count of sexual battery with a firearm upon a person over the age of eleven (11) years (Count IV) (Ex. A at 95–98). On September 10, 1979, Petitioner was sentenced to death on the murder count and imprisonment for his natural life as to each remaining count, with the life sentences to run consecutively to each other and to the death sentence (*id.*). The Florida Supreme Court affirmed the convictions but, noting that Petitioner could not be punished for the kidnapping that formed the basis for felony murder, struck the sentence (but not the conviction) on the kidnapping count. *See* Copeland v. State, 457 So. 2d 1012, 1018 (Fla. 1984).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 23). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

In 1987, the United States Supreme Court vacated Petitioner's death sentence on Count I and remanded the case to the Supreme Court of Florida for further consideration in light of <u>Hitchcock v. Florida</u>, 481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987).[2]  *See* <u>Copeland v. Dugger</u>, 484 U.S. 807, 108 S. Ct. 55, 98 L. Ed. 2d 19 (Mem) (1987).  The Florida Supreme Court remanded the case to the trial court for a new sentencing hearing.  *See* <u>Copeland v. Dugger</u>, 565 So. 2d 1348, 1350 (Fla. 1990).

On remand, Petitioner entered a negotiated Sentencing Agreement, pursuant to which the State agreed to imposition of a sentence of life imprisonment on the murder count (Count I), pursuant to Florida Statutes § 775.082(1), and Petitioner (1) agreed that a life sentence would be imposed on the murder count, (2) agreed that the life sentence would run consecutively to life sentences imposed on September 10, 1979, on the other counts (even though the life sentence on the kidnapping count had previously been stricken), (3) waived all credit for time served on the murder count and agreed that the new life sentence would commence on the date it was imposed, (4) agreed not to seek or accept parole, clemency, or any other form of release from

---

[2] In <u>Hitchcock</u>, the Supreme Court held that it was unconstitutional for the sentencing judge to instruct an advisory jury not to consider, and for the sentencing judge to refuse to consider, evidence of nonstatutory mitigating circumstances.

confinement, and (5) acknowledged his understanding that he would be incarcerated for the balance of his natural life (Ex. A at 99–104).  On February 21, 1992, the sentencing court orally pronounced the following sentence:

> THE COURT:       Okay, Mr. Copeland, I am here in accordance with this agreement, I would sentence you to life imprisonment with a minimum of 25 years in accordance with the agreement and will be incorporated in this sentence, you are to receive no credit for time served on this count.  That this count sentence is to run consecutive to all other sentences imposed in this case.
>
> In accordance with this agreement, you shall not seek parole, executive clemency, or any other form of release from confinement and you will in effect be incarcerated for the rest of your natural life.

(Ex. A at 111–12).  Consistent with the oral pronouncement, the written Judgment stated Petitioner's sentence as to Count I as follows:  "For a term of Life—25-year minimum mandatory before eligibility for parole & pursuant to the Sentencing Agreement attached hereto" (*id.* at 91–94).  The Judgment stated that the sentence on Count I would run consecutively to the sentences imposed on September 10, 1979, on Counts II, III, and IV (*id.*).

On March 3, 2014, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. A at 1–28).  In an order rendered April 13, 2015, the state circuit court granted the motion only to the extent that Petitioner challenged the sentence imposed on Count III (the kidnapping

count), since the Florida Supreme Count had vacated the sentence on that count on direct appeal (*id.* at 87–90). The post-conviction court ordered the clerk of court to prepare an amended judgment and sentence striking the sentence for Count III. The court denied the Rule 3.800(a) motion in all other respects (*id.*). An amended judgment rendered on April 16, 2015 (Ex. B). Petitioner appealed the circuit court's decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D15-2772 (Ex. A at 130–31, Ex. C). The First DCA affirmed per curiam without written opinion on December 4, 2015, with the mandate issuing February 29, 2016 (Exs. E, F). Copeland v. State, 184 So. 3d 519 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on August 2, 2016 (ECF No. 1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

**(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court

at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63,

71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established"

only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175

L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L.

Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this

Court's decisions." (internal quotation marks and citation omitted)).

　　　　After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the result

of the state-court decision contradicts them.").  Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  See Woods, 135 S. Ct. at 1377 (holding, as to claim that

counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different

conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.; see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. See Cave v. Sec'y for Dep't of Corr., 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

## III.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "The trial court inappropriately ruled that Petitioner's argument that his sentence is illegal fails because he waived parole, in that per Stat. 775.082(1) (1978), parole was automatically imposed.  Therefore, making it unwaivable."</u>

Petitioner contends at the time of his offense conduct in 1978, the sentencing statute for first degree murder, Florida Statutes § 775.082(1), provided only two legal sentencing options, either death or life imprisonment without eligibility for parole until the defendant serves no less than 25 years (ECF No. 1 at 5; ECF No. 2 at 11–14).[3]  Petitioner contends the Sentencing Agreement, pursuant to which he was

---

[3] Citations to the parties' pleadings reflect the page numbers automatically assigned by the court's electronic filing system, rather that those of the original documents.

resentenced on the murder count (Count I) from death to life imprisonment, is illegal and invalid because it requires him to waive parole even though a life sentence without eligibility for parole was not a legal sentencing option under the statute (*id.*). Petitioner contends a defendant may not agree to an illegal sentence, including a sentence which exceeds the statutory maximum (*id.*). Petitioner also contends his waiver of parole is invalid, because he was never informed that the sentencing statute required parole eligibility as part of a life sentence, nor was he informed that a waiver of parole was illegal under the statute (*id.*).

Respondent argues Petitioner made a "similar" claim in the Rule 3.800(a) proceeding (ECF No. 23 at 9). Respondent contends Petitioner's claim fails for two reasons. First, his argument is premised solely on state law (*id.* at 9). Second, the state court's ruling, that Petitioner could waive his statutory right to parole, was not based upon an unreasonable determination of fact, nor was it contrary to or an unreasonable application of any clearly established federal law as determined by the Supreme Court (*id.*).

In Petitioner's reply, he contends the trial court's resentencing him to a sentence that was not authorized under § 775.082 violates the Eighth Amendment and "ex post facto law" (ECF No. 29 at 6).

1.    Clearly Established Federal Law

"[A] person who has been [ ] convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, . . ." <u>Chapman v. United States</u>, 500 U.S. 453, 465, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991); <u>Ex Parte Lange</u>, 85 U.S. (18 Wall.) 163, 176, 21 L. Ed. 872 (1873) (granting habeas relief to a federal prisoner who had been sentenced to a term of imprisonment and a fine where the statute prescribed imprisonment or a fine); *see also* <u>McCleskey v. Zant</u>, 499 U.S. 467, 478, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (confirming that <u>Ex Parte Lange</u> involved a "sentence[ ] imposed without statutory authorization").

2.    Federal Review of State Court Decision

Petitioner presented Ground One as Issue One of his Rule 3.800 motion (Ex. A at 5–14).  The state circuit court adjudicated the claim as follows:

> Defendant contends that his sentence is illegal because in 1978 there was no statutory mechanism for a life sentence without parole. Defendant's argument fails because he unequivocally waived his right to parole as part of the negotiated sentencing agreement. *Exh. 2-Sentencing Hearing*.  Having received the benefit of taking the death penalty off the table, he cannot, years later, attack his negotiated sentence. *See Carson v. State*, 37 So. 3d 884, 885 (Fla. 1st DCA 2010).

> In furtherance of his argument Defendant cites various cases that stand for the proposition that a defendant cannot plead to an illegal sentence.  Defendant is no doubt correct that a court cannot sentence a criminal defendant to a sentence which exceeds the statutory maximum,

no matter whether he agrees. *See, e.g. Costin v. State*, 46 So. 3d 96 (Fla. 1st DCA 2010). However, such is not the case here. Defendant was sentenced to life incarceration, which is less than the statutory maximum of the death penalty. In agreeing to this sentence, Defendant merely waived his right to parole—something he was entitled to do—in exchange for the State removing the threat of the death penalty. *Cf Cochran v. State*, 476 So. 2d 207 (Fla. 1985) (holding that when a parole eligible defendant elected to be sentenced under the guidelines, the record need not show knowing and intelligent waiver of right to parole).

> This claim is denied.

(Ex. A at 88). The First DCA affirmed the decision without written opinion (Ex. E).

The version of § 775.082 in effect at the time of Petitioner's offense conduct provided:

> A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, in the latter event such person shall be punished by death.

Fla. Stat. § 775.082 (effective until amendment on May 25, 1994).

The state court's determination that Petitioner's sentence did not exceed the statutory maximum was based purely upon its interpretation of state law. This federal habeas court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Therefore, this

federal court must defer to the state court's determination that Petitioner's new sentence on Count I did not exceed the statutory maximum (i.e., death).

Additionally, to the extent Petitioner contends his sentence violates the Ex Post Facto Clause, his claim is without merit. At Petitioner's resentencing, the state court did not increase Petitioner's sentence or retroactively apply the post-1994 version of § 775.082.

However, the state court's determination that the parole waiver provision of the Sentencing Agreement was valid is unreasonable. In exchange for the State's agreeing to the imposition of a sentence of life imprisonment, Petitioner agreed not to seek or accept parole (*see* Ex. A at 99–102). Petitioner contends he could not legally agree to this, because life imprisonment without the possibility of parole was not an available sentence under § 775.082 at the time of his offense conduct. He relies upon the Eleventh Circuit's decision in Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278 (11th Cir. 2014), in support of his argument.

In Bates, the defendant was sentenced to death for a murder he committed in 1982. Bates, 768 F.3d at 1285. As in Petitioner's case, the version of § 775.082 in effect at the time of Bates' offense conduct provided that life imprisonment with the possibility of parole after 25 years was the only alternative to a death sentence. *Id.* at

1285–86.  In state court, Bates appealed his death sentence, contending that the trial court violated his due process rights during the penalty phase by refusing to instruct the jury (1) that the jury could impose a sentence of life without the possibility of parole under the 1994 amendment to Fla. Stat. § 775.082, or (2) that Petitioner had agreed to waive parole eligibility under the pre-amendment version of that statute.  *Id.* at 1286, 1300.  The Florida Supreme Court rejected Bates' claim of trial court error with respect to the jury instructions, based on its interpretation of the 1994 amendment to Fla. Stat. § 775.082.  *Id.* at 1286–87, 1301.  The Florida Supreme Court held that the amended statute, which eliminated the possibility of parole for capital defendants sentenced to life in prison, was not retroactively applicable to crimes committed before its effective date of May 25, 1994; therefore, Bates was not entitled to an instruction that the jury could impose a sentence under the amended statute.  *Id.* at 1301 (internal quotation marks and citation omitted).    From that threshold determination that the 1994 amendment could have no effect on Bates' sentencing, the state supreme court rejected Bates' waiver arguments (i.e., that he was entitled to a jury instruction advising the jury that he had agreed to waive parole):

> Our analysis of this issue causes us to reject appellant's waiver arguments.    Because the 1994 amendment can have no effect on appellant's sentencing, we conclude that the waiver of an ex post facto claim in respect to the 1994 amendment to section 775.082 is of no

consequence.  The waiver of ex post facto rights would only be an issue if the statute could have an effect on appellant's sentence which, as we have stated, it cannot.

Appellant's alternate contention, that the jury should have been advised that appellant would agree to waive the possibility of parole, is also unavailing under Florida's capital sentencing scheme because, as the trial court ruled, "[a] defendant cannot by agreement confer on the court the authority to impose an illegal sentence."  Williams v. State, 500 So. 2d 501, 503 (Fla. 1986).  At the time appellant committed this murder, the Legislature had not established life without the possibility of parole as punishment for this crime.

Bates v. State, 750 So. 2d 6, 10 (Fla. 1999) (footnote omitted).

In Bates' federal habeas petition, he asserted the same due process claim regarding the jury instruction.  *See* Bates, 768 F.3d at 1287.  The district court determined that the Florida Supreme Court's rejection of Bates' claim was entitled to deference under the AEDPA.  *See id.*

On appeal to the Eleventh Circuit, Bates argued that retroactively applying the 1994 version of § 775.082 to the murder he committed in 1982 would not violate the constitutional prohibition against ex post facto laws because it would not work to his disadvantage, and he had otherwise agreed to waive any ex post facto rights.  Bates, 768 F.3d at 1300.  He argued that because he had agreed to waive his eligibility for parole under the pre-amendment version of § 775.082, he was entitled "to an accurate jury instruction" that a sentence of life without the possibility of parole could be

imposed in lieu of the death penalty.  *Id.*  Bates relied upon <u>Simmons v. South</u>

<u>Carolina</u>, 512 U.S. 154, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994).  In <u>Simmons</u>, the

Supreme Court held that "where the defendant's future dangerousness is at issue, and

state law prohibits the defendant's release on parole, due process requires that the

sentencing jury be informed that the defendant is parole ineligible."  <u>Bates</u>, 768 F.3d

at 1301 (citing <u>Simmons</u>, 512 U.S. at 156 (plurality opinion); *id.* at 178 (O'Connor,

J., concurring)).

The Eleventh Circuit held that the Florida Supreme Court's decision was

neither contrary to nor an unreasonable application of <u>Simmons</u> and its progeny.  *Id.*

at 1302.  The court reasoned:

> The Florida Supreme Court's twin determinations—that the 1994
> amendment to § 775.082 does not apply retroactively to Bates' criminal
> conduct and that he had no right under state law to waive his parole
> eligibility—conclusively establish that Bates would be eligible for parole
> if the jury sentenced him to life imprisonment.  In light of the Florida
> Supreme Court's interpretation of state law, which is binding on federal
> courts, Bates was not entitled under <u>Simmons</u> to inform the jury that it
> could impose a sentence of life without the possibility of parole or that
> he had agreed to waive his parole eligibility.

<u>Bates</u>, 768 F.3d at 1303 (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68, 112 S. Ct.

475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."); <u>Mullaney v. Wilbur,</u>

421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law and that we are bound by their constructions except in extreme circumstances.") (citation omitted); Reaves v. Sec'y, Fla. Dep't of Corr., 717 F.3d 886, 903 (11th Cir. 2013) ("The Florida Supreme Court's interpretation of state law is binding on federal courts.").

Based upon the Florida Supreme Court's interpretation of the pre-1994 version of § 775.082 in Bates (i.e., that life imprisonment without the possibility of parole was not a legal sentence under that statute, see Bates, 750 So. 2d at 10), Petitioner could not waive parole, because life imprisonment without parole was not an available punishment under the pre-1994 sentencing statute. See, e.g., Echols v. Thomas, 62 F.3d 344, 344 (11th Cir. 1995) (Mem) (upholding district court's denial of habeas petitioner's claim that life sentence was not authorized by state law, where state's highest court held that petitioner was legally subject to life sentences imposed by state trial court). In other words, Petitioner could not by agreement confer on the resentencing court the authority to impose an illegal sentence. There is no reasonable basis for the state court's conclusion to the contrary.

However, that is not the end of the court's analysis on federal habeas.  The

court must still determine whether the resentencing court's adoption of the parole

waiver provision had a substantial and injurious effect on Petitioner's sentence.  *See*

Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

Without the parole waiver provision, Petitioner would still have to serve his life

sentence on Count II and his life sentence on Count IV, and only then would he begin

to serve his life sentence on Count I.  Under these circumstances, the undersigned

cannot say that the parole waiver provision had a substantial and injurious effect on

Petitioner's sentence.  Therefore, Petitioner is not entitled to federal habeas relief on

Ground One.

> B.     Ground Two:  "The trial court violated Petitioner's Double Jeopardy
> right to have 14 years time served, where such time was waived in excess of the
> statutory maximum."
>
> Ground Three:   "Trial court failed to acknowledge that Petitioner is
> forced to serve his sentence in piecemeal, because of the illegal application of
> the waiver of 14 years.  And restructuring of Count I to run consecutive to all
> other Counts."

In Ground Two, Petitioner claims that the resentencing court's failure to award

sentence credit for the 14 years he served in prison prior to resentencing violated the

constitutional prohibition against double jeopardy (ECF No. 1 at 5; ECF No. 2 at

15–19).  Petitioner contends that by failing to award sentence credit for time he served

on death row, the state court essentially imposed two sentences on Count I, i.e., the original death sentence of which Petitioner served 14 years, and the life sentence imposed at resentencing (ECF No. 2 at 15–19). Petitioner additionally argues that by failing to grant him sentence credit, the resentencing court essentially resentenced him to life "plus" fourteen years, which was more onerous than the life sentence authorized by § 775.082 and exceeded the statutory maximum (*id.*).

In Ground Three, Petitioner contends that once he began serving his sentence on Count I, it could not be stopped and then restarted to run consecutive to the sentences on the remaining Counts (*see* ECF No. 1 at 8; ECF No. 2 at 17–22). Petitioner contends that such a restructuring of his sentence violates the Double Jeopardy Clause (*id.*).

Respondent argues that Petitioner made "similar" claims in the Rule 3.800(a) proceeding (ECF No. 23 at 9–11). Respondent contends that despite Petitioner's reference to double jeopardy, his argument is premised solely on state law (*id.*). Respondent additionally argues there is no clearly established federal law that prohibits a defendant from waiving a claim of right to credit for time served (*id.*). Further, there is no clearly established federal law that a person sentenced to death cannot make a plea agreement that removes the death sentence in return for agreeing

that he will never claim entitlement to time served prior to being resentenced (*id.*).

Moreover, since Petitioner is serving a life sentence without parole, any lack of credit

for time served could not prejudice him (*id.*).

           1.      Clearly Established Federal Law

        The Double Jeopardy Clause protects against multiple punishments for the same

offense.  *See* Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 307–08, 104 S.

Ct. 1805, 80 L. Ed. 2d 311 (1984) (citation and footnote omitted); *see also* United

States v. Cochran, 883 F.2d 1012, 1016 (11th Cir. 1989), *superseded by rule on other

grounds as stated in* United States v. Diaz-Clark, 292 F.3d 1310, 1318 (11th Cir.

2002).

        In United States v. Pearce, 395 U.S. 711, 718–19, 89 S. Ct. 2072, 23 L. Ed.

2d 656 (1969), the defendant pleaded guilty to four charges of burglary and received

a ten-year prison term.  395 U.S. at 714–16.  His convictions were later vacated based

on ineffective assistance of counsel.  *Id.*  After a retrial, he was convicted and

sentenced to a 25-year prison term.  *Id.*  He then brought a federal habeas proceeding

alleging that the state trial court erred when it failed to give him credit for time served

on his original sentence.  *Id.*  The Supreme Court agreed, holding that "the

constitutional guarantee against multiple punishments for the same offense absolutely

requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Id.* at 718–19.

But the Supreme Court subsequently held that, in certain situations, a defendant may waive a double jeopardy challenge as part of a plea agreement. *See* <u>Ricketts v. Adamson</u>, 483 U.S. 1, 9–10, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987). The defendant in <u>Ricketts</u> entered a plea agreement in which he agreed to plead guilty to a charge of second degree murder (he was originally charged with first degree murder) in exchange for his testifying against two other individuals. *Id.* at 3–4. The plea agreement specified that, if Ricketts refused to testify, the original charge of first degree murder may be reinstated, and the parties returned to the status quo. *Id.* at 3, 9. When Ricketts refused to testify, the prosecution reinstated the original, harsher, charge. *Id.* at 5–7. Ricketts was convicted of first degree murder and sentenced to death. *Id.* at 6.

Ricketts filed a federal habeas petition arguing that the State violated his rights under the Double Jeopardy Clause. 483 U.S. at 7. The Supreme Court held that Ricketts waived any double jeopardy defense, reasoning that a "[plea] agreement specifying that charges may be reinstated given certain circumstances is, at least under the provisions of this plea agreement, precisely equivalent to an agreement waiving

a double jeopardy defense." *Id.* at 9–10. The Supreme Court did not find it significant that double jeopardy was not expressly waived in the plea agreement. *Id.* at 9. Breaching the agreement returned the defendant to the status quo, at which point he had "no double jeopardy defense to waive." *Id.* at 10; *see also* <u>United States v. Scott</u>, 437 U.S. 82, 99, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978) (the Double Jeopardy Clause does not relieve a defendant from the consequences of his voluntary choice); <u>Dermota v. United States</u>, 895 F.2d 1324, 1325–26 (11th Cir. 1990) (defendant waived double jeopardy objection to multiple punishments for the same offense by pleading guilty to separate offenses "freely, voluntarily, and accompanied by his attorney").

### 2.     Federal Review of State Court Decision

Petitioner presented Grounds Two and Three as Issues Two and Three of his Rule 3.800(a) motion (Ex. A at 14–22). The state circuit court adjudicated the claims as follows:

### Issue Two

Defendant contends that his sentence is illegal because the new sentence failed to afford him 14 years credit for time he already served in prison. Because the sentencing agreement waived prior credit, this claim fails. *Exh. 2.* Defendant cannot enjoy the benefit of his agreement and then more than 20 years later attack its burdens. *See Johnson v.*

> *State*, 60 So. 3d 1045 (Fla. 2011). Nor is Defendant being forced to serve his sentence piecemeal. This claim is denied.
>
> ### Issue Three
>
> Defendant takes issue with the sentence structuring upon resentencing. He contends that because count 1 was originally the first sentence to run that subsequently ordering it to run consecutively to counts 2, 3, and 4, impermissibly interrupts the sentence. Because the sentencing on count 1 was a de novo resentencing and because Defendant waived the 14 years of credit, the Court finds no merit to this argument.

(Ex. A at 89). The First DCA affirmed the decision without written opinion (Ex. E).

The Sentencing Agreement explicitly provided:

> 4.    The Defendant agrees that the sentence imposed for First Degree Murder will run consecutively to the sentences under Counts II, III and IV, imposed on September 10, 1979.
>
> 5.    The Defendant waives all credit for time served on the previous sentence for murder in first degree and that the sentence imposed pursuant to this agreement shall commence from the date it is imposed.

(Ex. A at 100). Petitioner signed the Sentencing Agreement with the following

certification:

> 1.    My attorney has fully informed me of the terms and conditions of the agreement and I hereby certify that I understand said terms and conditions and the consequences thereof.

> 2.    I have not been coerced by any person to execute this agreement and do so freely and voluntarily, upon the advice of my attorney and on the belief that it is in my best interest.

(Ex. A at 101–02).

At the resentencing hearing, Petitioner affirmed that he had reviewed the terms of the Sentencing Agreement with his attorney, and that he (Petitioner) signed it (Ex. A at 108–09).  The resentencing court indicated that, in accordance with the terms of the Sentencing Agreement, Petitioner would receive no credit for time he had already served on Count I; that his sentence on Count I would run consecutive to the sentences imposed on the other Counts; that Petitioner agreed not to seek parole or any other form of release on Count I; and that the Sentencing Agreement would be set aside and the case set for trial if Petitioner violated any terms of the Sentencing Agreement (*id.* at 111–12).  The court asked Petitioner whether he understood those terms, and Petitioner answered, "Yes, sir" (*id.* at 112).

The state court reasonably rejected Petitioner's double jeopardy claim based upon the resentencing court's failure to award credit for the 14 years Petitioner had served of his death sentence.  In this case, as in <u>Ricketts</u>, Petitioner knowingly, freely, voluntarily, and with the aid of counsel waived any right to credit for time served, and by extension his right against double jeopardy.  Therefore, the court's failure to award

14 years of credit on Petitioner's new life sentence did not violate the Double Jeopardy Clause. *See* <u>Ricketts</u>, 483 U.S. at 9–10; *see also*, <u>Cochran</u>, 883 F.2d at 1017 ("[A]ny expectation of finality in a sentence is wholly absent where, as here, the defendant requests that his prior sentences be nullified . . . . '[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.'") (citations omitted); *see also, e.g.*, <u>Jenkins v. Sec'y, Dep't of Corr.</u>, — F. App'x —, 2017 WL 4772426, at *3 (11th Cir. Oct. 23, 2017) (state court's denial of habeas petitioner's double jeopardy claim was not contrary to or an unreasonable application of clearly established federal law where petitioner entered plea agreement at resentencing which explicitly provided he would not receive credit for time served; petitioner represented to resentencing court that he had read agreement, discussed it with counsel, and understood it, and that no one had coerced or threatened him into entering it; and petitioner did not protest or express disagreement at plea hearing when court indicated petitioner was not entitled to credit for time served) (unpublished but recognized as persuasive authority).

　　Additionally, the state court reasonably rejected Petitioner's double jeopardy claim concerning the restructuring of his sentence so that his life sentence on Count I ran consecutively to each of the consecutive life sentences imposed on the other

Counts.  Petitioner's original sentence called for the consecutive life sentences on

Counts II, III, and IV to run consecutively to Petitioner's death sentence on Count I

(*see* Ex. A at 95–98).  The resentencing court's reordering of Petitioner's sentences

did not constitute a harsher or longer sentence than Petitioner's original sentence.

Therefore, no double jeopardy violation occurred with respect to the court's

restructuring/reordering of Petitioner's sentences.

Under the circumstances of Petitioner's case, this federal court cannot conclude

that the state court's denial of Petitioner's double jeopardy claims, based upon the

resentencing court's failure to award Petitioner 14 years of credit on Count I, and the

court's running the new sentence on Count I consecutively to the sentences on the

remaining Counts, was contrary to or an unreasonable application of clearly

established federal law.  Therefore, Petitioner is not entitled to federal habeas relief

on Ground Two or Ground Three.

C.    Ground Four:  "Trial court fail [sic] to equate [sic] that the sentencing
court's lack of jurisdiction to impose a sentence in Count III, where [sic] such
imposition was illegal.  Therefore, farther [sic] supports the illegality [sic] of
Petitioner's argument."

Petitioner contends the resentencing court did not have jurisdiction to reimpose

the sentence on Count III (the kidnapping charge), because the Florida Supreme Court

previously struck the sentence on Count III (because the kidnapping formed the basis

for the felony murder charge in Count I) (ECF No. 1 at 10; ECF No. 2 at 26–27).

Petitioner acknowledges that the state post-conviction court agreed with his position

and ordered the clerk of court to prepare an amended judgment striking the sentence

on Count III; however, Petitioner contends the post-conviction court also should have

ordered the clerk to strike the new sentence on Count I, because the resentencing

court's error on Count III nullified the Sentencing Agreement and rendered his new

sentence on Count I illegal (ECF No. 2 at 26–27; ECF No. 29 at 20–21).

Respondent argues that Petitioner made a "similar" claim in the Rule 3.800(a)

proceeding (ECF No. 23 at 12).  Respondent contends the state court's rejection of

Petitioner's argument was not contrary to or an unreasonable application of clearly

established federal law (*id.*).

Petitioner presented his arguments to the state circuit court in a motion for

rehearing of its order denying in part and granting in part the Rule 3.800(a) motion

(Ex. A at 116–27).  The circuit court summarily denied the motion for rehearing

without explanation (*id.* at 129).  Petitioner then presented his argument to the First

DCA in the post-conviction appeal (*see* Ex. C at 27–29).  The First DCA affirmed the

lower court's decision without written opinion (Ex. E).

The only legal authority upon which Petitioner relies for his due process claim, in both state court and this federal court, is State v. McBride, 848 So. 2d 287 (Fla. 2003) (*see* ECF No. 2 at 27; ECF No. 23, Ex. C: ECF No. 29 at 27–29).  In McBride, the Florida Supreme Court held that a Florida defendant is not entitled to pursue relief pursuant to a successive Rule 3.800(a) motion to correct an illegal sentence when the defendant raised the identical issue in a proper Rule 3.800(a) motion that was denied by the trial court but never appeal to the district court of appeal.   848 So. 2d at 288. In so holding, the state supreme court relied upon one Supreme Court case, Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 599, 68 S. Ct. 715, 92 L. Ed. 898 (1948), for the principle that the collateral estoppel doctrine contains a manifest injustice exception.  McBride, 848 So. 2d at 291.

The Sunnen decision involved the Supreme Court's review of decisions of the Tax Court of the United States, redetermining deficiencies in the income tax imposed upon taxpayer Sunnen by the Commissioner of Internal Revenue.  The decision did not involve the constitutionality of a sentencing agreement in a criminal case. Therefore, Sunnen does not govern Petitioner's due process claim.

No United States Supreme Court holding embodies the legal principle at issue in Ground Four—i.e., whether a reviewing court's vacatur of one sentence, imposed

pursuant to a sentencing agreement entered into by the defendant and the government and which involved multiple sentences, renders the entire sentencing agreement illegal such that its enforcement violates the defendant's federal due process rights.  Given the lack of holdings from the Supreme Court on the issue Petitioner presents in Ground Four, the state court's rejection of Petitioner's constitutional challenge to his new sentence was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  *See* Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1377, 191 L. Ed. 2d 464 (2015) (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)); Schriro v. Landrigan, 550 U.S. 465, 478, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007) (holding that the state court did not unreasonably apply federal law because "we have never addressed a situation like this."); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the state court "was not contrary to or an unreasonable

application of clearly established federal law."); *see also, e.g.*, <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1287–88 (11th Cir. 2012) ("[T]he Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process.  Reese is not entitled to habeas relief because 'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'  The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.") ((*quoting* <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009)); <u>Kitchen v. Sec'y, Fla. Dep't of Corr.</u>, 571 F. App'x 930, 932 (11th Cir. 2014) ("The state courts' decisions in the instant case were not contrary to or unreasonable applications of clearly-established federal law because no Supreme Court precedent establishes that translations of court proceedings that are inadequate in the manner Kitchen alleges render a trial 'fundamentally unfair.'").

IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  Here, Petitioner can make that showing only as to Ground One.  Therefore, the undersigned recommends that the district court grant a certificate of appealability only as to Ground One in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **GRANTED ONLY AS TO GROUND ONE**, and that a certificate of appealability be **DENIED AS TO GROUNDS TWO, THREE, AND FOUR**.

At Pensacola, Florida, this 9th day of April 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**